# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-20026-STA** |
| | ) | |
| **BILLY JOHNSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS
## COUNT THREE OF THE INDICTMENT

Before the Court is Defendant Billy Johnson's Motion to Dismiss Count Three of the

Indictment (D.E. # 90) filed on April 8, 2009.  For the reasons set forth below, the Motion is

**DENIED**.

## BACKGROUND

Defendant Billy Johnson was indicted on one count of conspiracy to commit murder-for-

hire pursuant to 18 U.S.C. § 1958(a); two counts of murder-for-hire pursuant to 18 U.S.C. §§

1958(a) and 2; and eight counts of perjury pursuant to 18 U.S.C. § 1623.[1]  Trial commenced on

March 23, 2009.  The jury returned a verdict of guilty as to all counts on April 15, 2009.

Defendant filed the instant Motion during trial pursuant to Fed. R. Crim. P. 12(b)(3)(B), which

provides that "at any time while the case is pending, the court may hear a claim that the

---

[1] Superseding Indictment, Aug. 14, 2008.

indictment or information fails to invoke the court's jurisdiction or to state an offense."

As to Count Three, Defendant argues that this murder-for-hire count against him should be dismissed because the interstate activity alleged in this case occurred after the murder took place.  More specifically, the murder of Martha Johnson happened on July 23, 1999; whereas, American Bankers Insurance Company ("ABIC") mailed two checks totaling $102,000 to Defendant in November 1999.  According to Defendant, the indictment fails to state an offense against him.  Defendant reads the statute, 18 U.S.C. § 1958(a), to indicate that the "alleged unlawful activity-the planned murder for hire- must take place subsequent to use of the mail or any other interstate facility."  Def.'s Brief 4.  Defendant construes the statute's phrase "with intent that a murder be committed" as a temporal sequence requirement that the interstate activity precede the murder.  Defendant analogizes this reading of the murder-for-hire statute to other provisions of the Travel Act, 18 U.S.C. § 1952, of which Section 1958 was originally a subset.  According to Defendant, the Sixth Circuit has held that to state a violation of the Travel Act, the use of an interstate facility must occur before the prohibited illegal activity.  Defendant argues that subsequent interstate activity cannot by definition "further" or "facilitate" an illegal murder-for-hire scheme.  Here Defendant again draws the analogy between the murder-for-hire statute and the federal mail fraud statute found at 18 U.S.C. § 1341 and cites *Kann v. United States*, 323 U.S. 88 (1944).  In *Kann*, the Supreme Court held that the interstate activity at issue in that case did not further the scheme for which the *Kann* defendants were tried because the scheme was complete prior to the interstate activity.  Thus, it could not be said that the interstate

2

activity furthered a scheme which was already accomplished.[2]  For these reasons Defendant seeks the dismissal of Count Three of the indictment.

The government has responded in opposition to Defendant's Motion.  First, the government argues that 18 U.S.C. § 1958(a) contains no temporal requirements as to the use of the mails.  As a result, none should be read into the statute.  For support, the government cites an Eighth Circuit case with a fact pattern similar to the facts alleged in the case at bar.  In *United States v. Basile*, the defendant was accused of taking out life insurance on his wife and then hiring another man to murder her.[3]  In *Basile*, the defendant subsequently filed a claim on the life insurance policy covering his wife with the intention to use part of the proceeds to pay the hit man.  Like the defendant in *Basile*, Defendant here was accused of planning the murder-for-hire of his mother and using the mails to file and receive life insurance benefits.  From these benefits, Defendant was accused of paying Danny Winberry $45,000 in consideration for the murder after the murder was committed.  The government argues therefore that the use of the mails in this case was in furtherance of the Defendant's murder-for-hire scheme as charged in Count Three.

In reply Defendant attempts to distinguish *Basile* by arguing that the murder-for-hire scheme in that case involved not just the post-murder receipt of life insurance proceeds but also the pre-murder application for the life insurance policy.  "*Basile* did not hold... the post-murder mailings were sufficient by themselves to satisfy § 1958's jurisdictional element."  Def.'s Reply 4.  Unlike *Basile*, there is no allegation in this case that Defendant used the mails to apply for the

---

[2] Defendant also cites *United States v. Maze*, 414 U.S. 395 (1974) and *Parr v. United States*, 363 U.S. 370 (1960) for similar holdings with respect to 18 U.S.C. § 1341.

[3] 109 F.3d 1304 (8th Cir. 1997).

life insurance policy on Martha Johnson prior to her murder.  Therefore, Defendant contends that *Basile* is inapposite.

## STANDARD OF REVIEW

The Sixth Circuit has held that an indictment is adequate if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[4]  It is well-settled that "[t]o be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime."[5]  "An indictment is usually sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense."[6]

## ANALYSIS

The Court holds that Court Three of the indictment properly states the elements of the offense of murder-for-hire.  The federal murder-for-hire statute found at 18 U.S.C. § 1958(a) makes it a crime to

travel[] in or cause[] another (including the intended victim) to travel in interstate or

---

[4] *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Maney,* 226 F.3d 660, 663 (6th Cir.2000); *United States v. Monus,* 128 F.3d 376, 388 (6th Cir.1997).

[5] *U.S. v. Landham*, 251 F.3d 1072, 1079-1080 (6th Cir. 2001).

[6] *Id.* (citing  *Hamling,* 418 U.S. at 117, 94 S.Ct. 2887; *Monus,* 128 F.3d at 388).

foreign commerce, or use or cause[] another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or ... conspire[] to do so.[7]

In construing § 1958, the Sixth Circuit set forth the following well-established principles for statutory construction: "statutory construction begins with the plain words of the statute.  We are to give words their ordinary, common meaning.  Only if we determine that the language of the statute is ambiguous do we turn to the legislative history."[8]  Like the defendant in *Ransbottom*, Defendant in the case before the Court argues that his conduct "did not constitute a violation of the murder-for-hire statute" and seeks the dismissal of this count from the indictment against him.[9]  In *Ransbottom*, the Sixth Circuit held

On its face, the statute at issue allows a conviction if the government proves that a defendant [engaged in interstate activity with] the intent that a contract murder be committed.  This requirement is plain and unambiguous.  Moreover, the statute gives no indication that the contract must be in existence and that the consideration must have been provided at the time of the travel.[10]

The *Ransbottom* court concluded that the only elements of the crime were the interstate activity and the formation of the contract for murder.  Importantly, the commission of a murder is not a required element.  The Sixth Circuit likewise rejected a reading of the statute that would require that the contract for murder be in existence or consideration given either prior to or subsequent

[7] 18 U.S.C. § 1958(a).

[8] *United States v. Ransbottom,* 914 F.2d 743, 746 (6th Cir. 1990) (internal citations omitted).

[9] *Id*. at 745.

[10] *Id*.

5

to the interstate activity.

Consistent with the holding in *Ransbottom*, the Court finds that § 1958 does not require that the elements of the offense occur in a specific sequence as Defendant would have it.  First and foremost, *Ransbottom* stands for the proposition that the murder itself is not an element of the crime.  Like other circuits, the Sixth Circuit has construed the statute so that the murder need not actually be committed in order for one to be guilty of murder-for-hire under § 1958.[11]  Thus, the fact that the murder of Martha Johnson occurred prior to the interstate activity alleged in Count Three of the indictment is irrelevant to prove the crime of murder-for-hire.  Moreover, just as § 1958 does not require that the contract already be in existence or that consideration be furnished at the time of the interstate activity, there is nothing in the plain wording of the statute to suggest that the interstate activity must be accomplished prior to the murder or proposed murder.  Therefore, the Court holds that Count Three of the indictment properly states the elements of the crime of murder-for-hire as to Defendant.

The Court's reading of § 1958 is consistent with another Sixth Circuit case applying the murder-for-hire statute, *United States v. Winters*.[12]  While it is true that *Winters* did not address

---

[11] *See United States v. Degan*, 229 F.3d 553 (6th Cir. 2000); *United States v. Marek*, 238 F.3d 310 (5th Cir. 2001); *United States v. Drury*, 396 F.3d 1303 (11th Cir. 2005).  Defendant has placed great weight on the statute's requirement that a defendant must act "with the intent that a murder be committed."  Defendant has construed "be committed" to indicate future tense as evidence that the murder must follow the interstate activity.  Rather than reading this phrase to indicate that the murder must be committed sometime in the future or after the interstate activity, the Court would point out that the same phrase makes murder-for-hire a crime without requiring that the murder actually be committed.

[12] 33 F.3d 720 (6th Cir. 1994) (upholding conviction under § 1958 where wife hired her brother to murder her estranged husband in consideration for $10,000 to be paid from life insurance benefits *after* husband's death).

the precise issue presented here, whether the murder-for-hire statute specifically requires that the interstate activity be accomplished prior to the murder, the Sixth Circuit in *Winters* approved a "broad interpretation of the requirements of federal jurisdiction," meaning the interstate activity required under § 1958.[13]  The *Winters* court adopted the following jury instruction as a correct statement of the law concerning the interstate activity element of § 1958: "that defendants used or caused to be used the interstate facility and that one of the reasons for using the interstate facility was to *promote, advance, manage, carry on or facilitate*" (emphasis added) the murder-for-hire.[14]  Clearly, the words "promote, advance, manage, carry on or facilitate" evidence a liberal interpretation of the interstate activity element that would be inconsistent with a temporal requirement that the interstate activity occur before the murder.  Instead, the Sixth Circuit has taken the view that the interstate activity need only make the murder-for-hire transaction possible.

Applying the standard announced in *Winters* to the facts alleged in this case, it is clear that Defendant's collection of the life insurance benefit covering his mother promoted, advanced, and facilitated the alleged scheme.  The testimony at trial indicated that Defendant told Danny Winberry that he could pay Winberry only $5,000 in advance for the murder of his mother and that the remaining $45,000 would be forthcoming after her death and upon Defendant's receipt of the life insurance.  Unlike the mail fraud scheme at issue in *Kann*, the scheme in this case was not complete until Defendant paid Winberry from the life insurance proceeds.  In other words the murder-for-hire scheme was not complete until after the interstate activity occurred.  Therefore,

---

[13] *Id*. at 722.

[14] *Id*.

there is no question that the interstate activity alleged in this case promoted, advanced, and facilitated the alleged scheme by which Defendant was to pay Winberry for the murder of his mother.

Defendant correctly points out that §1958 was originally a subset of the Travel Act, 18 U.S.C. §1952, and that the Sixth Circuit has held that the Travel Act requires "that illegal acts be performed after the use of a facility in interstate or foreign commerce."[15]  However, the analogy between the Travel Act and §1958 is unavailing on this point.  As a general matter, it cannot be said that the Sixth Circuit always interprets the murder-for-hire statute in light of the Travel Act.[16]  More importantly, the murder-for-hire statute and the Travel Act contain very different language.  The plain wording of the Travel Act makes it a crime to "travel[] in interstate commerce with the intent [to commit proscribed acts]... and *thereafter* perform[] or attempt[] to perform [the proscribed acts].... " (emphasis added).[17]  The Travel Act makes the interstate travel an element precedent to a subsequent illegal act by virtue of the word "thereafter."  By contrast, § 1958 contains no such structure or wording to indicate that the interstate activity must precede the illegal act.  Indeed such a rigid reading would unnecessarily limit the application of the statute.  If "the illegal acts [had to] be performed after the use of a facility in interstate or foreign commerce" as is required under the Travel Act, then with respect to the crime of murder-for-hire, the interstate travel would have to precede _all_ of the elements of the crime, not just a murder or

---

[15] *United States v. Eisner*, 533 F.2d 987, 992-93 (6th Cir. 1976).

[16] *Winters*, 33 F.3d at 722 (rejecting application of Travel Act's scienter requirement to murder-for-hire statute) (The Court was "unwilling to extend our interpretation of the Travel Act to another, albeit closely related, statute," the murder-for-hire statute).

[17] 18 U.S.C. § 1952.

attempted murder.  This would mean that the interstate travel would have to come before the formation of the contract and the giving of consideration.  This is precisely the result the Sixth Circuit rejected in *Ransbottom*.  Such a requirement is also inconsistent with the fact that a murder need not actually be committed in order for one to be guilty of murder-for-hire under § 1958, as discussed above.[18]  Based upon the principles discussed herein, this Court concludes that the Sixth Circuit would decline to read the Travel Act's interstate activity requirement into §1958.  Therefore, Defendant's argument by analogy to the Travel Act is unconvincing.


<u>CONCLUSION</u>

The Court holds that Count Three of the indictment properly states the elements of the offense of murder-for-hire pursuant to 18 U.S.C. § 1958(a).  Therefore, Defendant's Motion to Dismiss this count of the indictment is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 28th, 2009.

---

[18] *See United States v. Degan*, 229 F.3d 553 (6th Cir. 2000); *United States v. Marek*, 238 F.3d 310 (5th Cir. 2001); *United States v. Drury*, 396 F.3d 1303 (11th Cir. 2005).

9